UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY

IN RE:

| | |
|---|---|
| GC LONDON KY INC. | CASE NO. 15-60463 |
| GC SOMERSET KY INC. | CASE NO. 15-60466 |
| | (LONDON DIVISION) |
| DEBTORS IN POSSESSION | CHAPTER 11 |
| | (JOINT APPLICATION PENDING) |

**DEBTORS' EXPEDITED MOTION FOR INTERIM USE OF CASH COLLATERAL
AND APPROVING SHORTENED AND LIMITED NOTICE OF
EXPEDITED HEARING ON AND FOR THIS MOTION TO BE
HEARD IN THE LEXINGTON DIVISION**

Come GC London KY Inc., and GC Somerset, KY Inc., as debtors and debtors in possession (collectively, the "Debtors"), by counsel, and pursuant to 11 U.S.C. § 363, Fed. R. Bankr. P. 4001, and other applicable law, and hereby move the Court for the entry of an Order for Interim Use of Cash Collateral and approving an expedited hearing to consider the motion of the Debtors and shortened and limited notice thereof (the "Interim Order") and for authority to use cash collateral for an interim period, until a final hearing for continued use can be held, and to provide adequate protection as set forth herein. The Debtors state that entry of the Interim Order is necessary to ensure continued going-concern operations and to protect and preserve the value of the Debtors' assets and ongoing operations. In support of the Motion, the Debtors state as follows:

**RULE 4001(b) STATEMENT:**

1

(a) <u>Name of Each Entity That May Claim an Interest in Cash Collateral</u> (all entities collectively referred to as the "Cash Collateral Creditors"):  See <u>Exhibit A</u> attached hereto and incorporated herein by reference, which sets forth each creditor, collateral, and claim amount. The inclusion of any creditor on Exhibit A identified as a Cash Collateral Creditor is not a stipulation that the creditor has a valid claim or lien in the Debtors' assets.

(b) <u>Purposes for the Use of Cash Collateral</u>:  The Debtors propose to use Cash Collateral to meet their postpetition obligations and to pay their emergency expenses including food for the next few days – estimated at 16,000 daily.

(c) <u>Terms and Duration</u>:  The Debtors seek authority to use cash collateral in the amounts as set forth on the Budget for the interim period effective *nunc pro tunc* from the Petition Date, April 10, 2015, through any next hearing date, and in addition to or pursuant to subsequent proposed budgets to be filed with the Court.  The Debtors seek to use Cash Collateral for the next several days until further hearing for food delivery and other emergency operational costs.  Food for the Debtors is estimated to be approximately $16,000 today.

(d) <u>Adequate Protection</u>:  In consideration of the Cash Collateral Creditors' consent to the use of the Cash Collateral by the Debtors and as part of the adequate protection for any diminution in the value of the Cash Collateral Creditors' interests in the prepetition collateral, pursuant to 11 U.S.C. §§ 361 and 363, the Debtors propose to grant to the Cash Collateral Creditors (only Certus Bank) a replacement lien upon all property of the Debtors of the same priority, validity, and type and description as the prepetition collateral as of the Petition Date (the "Replacement Lien"). The Debtors are willing to negotiate adequate protection with Certus Bank upon release of its bank accounts. Other creditors asserting liens in Cash Collateral appear to have no value to attach to their asserted liens due to a secured senior creditor or their liens are avoidable by the Debtor. As further adequate protection, Debtors shall continue to account for all cash use, and the proposed cash use is being incurred to preserve property of the Estate.

## JURISDICTION AND VENUE

1. On April 10, 2015 (the "Petition Date"), the Debtors filed voluntary petitions for relief with this Court under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq*. (the "Bankruptcy Code").  The Debtors are operating their businesses as debtors and debtors in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

2. This Court has jurisdiction over these Chapter 11 cases under 28 U.S.C. §§ 157 and 1334.  These matters constitutes core proceedings under 28 U.S.C. § 157(b)(2)(A).

3. Five of the seven affiliated Debtors maintain a principal place of business in the Kentucky counties of Laurel, Somerset, Fayette, Jessamine and Scott Counties. Hence, venue is appropriate in this District for those entities. Two of the Debtors maintain a principal place of business in New Jersey and venue is appropriate in this District for those Debtors as there are pending bankruptcy cases of those Debtors' affiliates in this District. Accordingly, venue for the Debtors' Chapter 11 cases is proper in this District under 28 U.S.C. § 1408 and 1409.

4. No trustee or examiner has been appointed in these Chapter 11 cases, and no creditors' committee or other official committee has been appointed.

## BACKGROUND

5. The Debtors operate various Golden Corral franchises in Kentucky and New Jersey. GC London KY Inc., GC Lexington KY Inc., GC Georgetown KY Inc., and GC Nicholasville KY, Inc., Kentucky corporations, were established on March 8, 2012. The shareholders of these entities are Dexter Bartholomew (85%) and Frank Seddio (15%). GC Somerset KY Inc., a Kentucky corporation, was also established on March 8, 2012. The shareholders of this entity are Adeline Francois (80%), Dexter Bartholomew (10%), and Frank Seddio (10%). GC Egg Harbor NJ Inc., a New Jersey corporation, is owned by Dexter Bartholomew (85%) and Frank Seddio (15%). The members of GC Delran NJ LLC, a New Jersey limited liability company, are Dexter Bartholomew (95%) and Adeline Francois (5%).

6. The Debtors began to experience financial difficulties in 2013 after entering into various oppressive merchant agreements with multiple merchant cash advance lenders. Under these predatory agreements, the Debtors would receive a loan or cash advance often styled as a "sale" but in reality a disguised loan transaction. In turn, the Debtors would repay the advance plus an additional sum (often referred to as the "purchase price" but in reality disguised interest

3

on the amount advanced) from a percentage (typically 18-25%) of future credit card receivables. These transactions often referred to as "sales" were in reality disguised loans that required personal guarantees by the owners and were collateralized by UCC-1 filings in assets other than credit card receivables. This type of predatory lending has actually been the subject of a few high-profile class action lawsuits and settlements in California.

7.      Under the burden of these merchant agreements, which are designed to be paid off in a relatively short period of time, the Debtors cash flow was seriously impacted.  As a result, the Debtors became in arrears with several of their major creditors and an out-of-court restructuring is impractical. Consequently, the Debtors seek to reorganize their businesses under Chapter 11 of the Bankruptcy Code in order to restructure their debts, reorganize as a going concern, and maximize value for the benefit of the creditors of their Estates.

**RELIEF REQUESTED**

8.      The Cash Collateral Creditors identified on Exhibit A may claim an interest in cash collateral pursuant to various UCC-1 filings of record with the Kentucky Secretary of State's Offices (see Exhibit A attached hereto for summary).  The Debtors request herein the authority to use Cash Collateral on an interim basis until further hearing for continued cash use. As used herein, "Cash Collateral" shall mean (i) all cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents derived from any secured creditor's collateral; and (ii) proceeds, rents, or profits of any secured creditor's collateral, including without limitation all amounts (A) received by the Debtors in the collection of the Debtors' prepetition account receivables and received by either the Debtors or their assignees, and (B) generated by the Debtors' operations, both prepetition and postpetition, and received by the Debtors or their assignees.

9. The Debtors' need to use Cash Collateral is essential to continuation of these Chapter 11 proceedings and to ensure continued going-concern operations to maximize the recovery to all creditors. Without the use of Cash Collateral as a means of providing working capital, the Debtors cannot meet their ongoing obligations incurred in the ordinary course of business. In short, the Debtors are unable to operate without the use of Cash Collateral and the entry of an Interim Order is necessary to avoid immediate and irreparable harm to the Debtors' operations, their creditors, and other parties in interest.

10. To preserve the value of the Debtors' assets, the Debtors require the interim use of Cash Collateral, and without such use, the value of the Debtors' assets will immediately and substantially diminish and the Debtors would be forced to cease their operations.

11. Section 363(c)(2) of the Bankruptcy Code provides that a debtor "may not use, sell or lease cash collateral . . . unless (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section."

12. The Debtors are unable to otherwise obtain funds, either unsecured or secured, in an amount necessary for the maintenance and preservation of the Debtors' assets from sources other than as provided by the use of Cash Collateral pursuant to the terms of the Interim Order or such other interim order as the Court may approve.

13. Good cause has been shown for the entry of the Interim Order. Among other things, entry of the Interim Order will allow the Debtors to maintain their operations and preserve their assets and to maximize recovery to all creditors. Further, the use of Cash Collateral will allow the Debtors to pay wages and other expenses necessary to maintain the Debtors' ongoing operations.

14. The Debtors only seek to use cash collateral for a few days until further hearing. As adequate protection for any diminution in the value of the Cash Collateral Creditors' interests in the Cash Collateral, pursuant to 11 U.S.C. §§ 361 and 363, the Debtors propose to grant the following Cash Collateral Creditor (Certus Bank) a Replacement Lien, subject only to any valid and enforceable, perfected, and non-avoidable liens of other secured creditors. The Debtors are willing to negotiate adequate protection payments with the above designated Cash Collateral Creditor; however, the Debtors' bank accounts have recently been subject to restraint and the Debtors are still experiencing issues with their bank at this time which prevents them from establishing any adequate protection payments during the Interim Period. As further adequate protection, the Debtors shall continue to account for all cash use, and the proposed cash use is being incurred to preserve property of the Estates.

15. The proposed interim use of Cash Collateral is for the time period until such date as the Court may set a final hearing on this Motion, which final hearing date is likewise being requested hereby.

WHEREFORE, the Debtors respectfully request entry of an Order for Interim Use of Cash Collateral.

## **NOTICE**

Notice is hereby given that the foregoing shall be brought on for hearing before the United States Bankruptcy Court for the Eastern District of Kentucky, 100 East Vine Street, Second Floor, Lexington, Kentucky, on Monday, April 13, 2015, at the hour of 1:00 p.m. (ET), or as soon thereafter as counsel may be heard.

Respectfully submitted,

DELCOTTO LAW GROUP PLLC

/s/ Jamie L. Harris, Esq.
KY Bar No. 91387
200 North Upper Street
Lexington, KY 40507
Telephone:  (859) 231-5800
Facsimile:   (859) 281-1179
jharris@dlgfirm.com
COUNSEL FOR DEBTORS
AND DEBTORS IN POSSESSION
(UNDER PENDING APPLICATION)

## CERTIFICATE OF SERVICE

In addition to the parties who will be served electronically by the Court's ECF System, the undersigned certifies that a true and accurate copy of the foregoing was served by first-class U.S. mail, postage prepaid, or electronic mail on April 13, 2015, on all non-ECF parties listed on the proposed Master Service List dated April 13, 2015 and via electronic mail to Certus Bank c/o Martin Tucker, Esq.

/s/ Jamie L. Harris, Esq.
COUNSEL FOR DEBTORS
AND DEBTORS IN POSSESSION
(UNDER PENDING APPLICATION)